IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION

| | |
|---|---|
| Abdul Aleem s/o MM Ibrahim, Jamilah Binte Abdullah, Pok Siok Kee, Eng Ooi Hieng, Swee Hang Danny Tan, Tong Lay Yeen Giovanna, Hooi Hian Lee, Jaryl Tan Hock Seng, Roger Teo Kok Wei, Teo Khim Ho, Man Hong Lee, Gatewoods Investment PTE. LTD., Panircelvan S/O Kaliannan, Thong Juay Koh, Siew Geok Tong, Sze Seng Tan, Tan Chin Hiang, Tan Sweet Keong, and Marcus Ian Tan Guan Xing, individually and on behalf of themselves and all others similarly situated,<br><br>         Plaintiffs,<br><br> vs.<br><br>PEARCE & DURICK, and JONATHAN P. SANSTEAD,<br><br>         Defendants | **Case No. 1:15-cv-00085** |
| DOMINIC WRIGHT, MARTIN LEESE, ANDREW CHITTENDEN, WHITE ROSE PROPERTIES, LLC, STEPHEN ROYALL, STEPHEN ROYALL AND MARIA THOMSON S.M.S.F., LLC, PETER MCRAE, MCRAE FAMILY HOLDINGS, INC., MARTIN ABSIL, MIN-WEI PETER LIU,<br>ADRIEN VINCIGUERRA, GAEL VINCIGUERRA, JAMES CAMPION, PRABAHARAN SUBRAMANIAM, ADRIAN SENG YEE PONG, TREVOR LOWMAN and ANNABEL LOWMAN, on behalf of themselves and all others similarly situated,<br><br>         Plaintiffs,<br> vs.<br><br>PEARCE & DURICK,<br><br> Defendant. | **Case No. 1:15-cv-00098** |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR APPOINTMENT OF INTERIM LEAD COUNSEL

Plaintiffs (as set forth in the captions above, hereinafter "Plaintiffs") respectfully submit this Memorandum of Law in support of their Unopposed Motion for Entry of Appointment of Interim Lead Counsel (in the proposed form submitted herewith), and set forth as follows.

### I.     FACTUAL AND PROCEDURAL BACKGROUND

The two above-captioned putative class actions arise out of the well-publicized decline and descent into receivership of a purported real estate development company known North Dakota Developments, LLC ("NDD"), a fraudulent real estate investment program that victimized approximately 1000 investors worldwide and sold about $62 million of unlawful securities in the form of investment contracts.  The Complaint in the first-filed class action, *Aleem v. Pearce & Durick* (hereinafter referred to as "AC") alleges legal malpractice, negligence, unjust enrichment and third-party beneficiary of attorney-client relationship claims against Defendants Pearce & Durick and Jonathan P. Sanstead on behalf of a class comprised of "persons who paid for the services of Pearce & Durick and Jonathan P. Sanstead… performed in connection with their NDD investments."  The *Wright* Complaint ("WC") alleges that Defendant Pearce & Durick actively assisted NDD in offering unregistered securities to the public. (WC ¶ 1)  The *Wright* complaint alleges that Pearce & Durick assisted the principals of NDD and related companies in selling interests in certain modular housing units, coupled with management agreements, which clearly constitute securities under applicable law, to investors both in the United States and abroad. *Id.*

The *Aleem* case plaintiffs filed a motion seeking entry of a case management order and appointment of their counsel as Class Counsel in that matter on July 2, 2015 (Case No. 1:15-cv-00085, ECF No. 6).  The *Wright* plaintiffs filed a motion for appointment of their counsel as

2

Interim Class Counsel on August 4, 2015 (1:15-cv-00098, ECF No. 13). These motions are mooted by the instant motion, and are hereby withdrawn.

The investments sold by NDD with Pearce & Durick's assistance were in the form of Land Lease and Management Agreements and membership units in four commercial housing developments for workers in the Bakken oil field region of western North Dakota and eastern Montana- so-called "man camps" intended to house workers. The four developments include Great American Lodge - Watford City West, Great American Lodge - Culbertson, Montana, Transhudson - Parshall, and Great American Lodge - Watford City East. (WC ¶ 2)

The investment contracts and membership units offered for sale and sold to the investors by NDD and its principals, with the active assistance and participation of Pearce & Durick, are securities as defined in North Dakota Century Code ("N.D.C.C.") § 10-04-02(19). (WC ¶ 4) This integrated offering of securities is sometimes referred to below as the "NDD Offering." *Id.* The interests sold in the NDD Offering are clearly securities within the meaning of applicable law. *See* N.D.C.C. § 10- 04-02(19); *see also SEC v. W.J. Howey Co.,* 328 U.S. 293 (1946), Section 2(a)(1) of Securities Act (15 U.S.C. 77b(a)(1) and Section 3(a)(10) of the Securities Exchange Act (15 U.S.C. 77b(a)(1)) (defining "security" as including "any… participation in any profit-sharing agreement [or]… investment contract). (WC ¶ 7) None of the securities sold in the NDD Offering were registered with the Securities and Exchange Commission or any state securities regulator, including the North Dakota Securities Department. (WC ¶ 6)

The offering materials for the NDD offering also contained misrepresentations and failed to disclose material facts, necessary to make the statements made in the offering documents, in light of the circumstances under which they were made, not misleading, in violation of N.D.C.C. § 10-04-04 and N.D.C.C. § 10-04-10. (WC ¶ 9)

Plaintiffs and members of the putative class, upon agreeing to invest in the NDD Scheme, were mandated to pay legal fees for Defendants to review the documents relating to their purchases of investments from NDD. (AC ¶ 93)  Defendants were aware that Plaintiffs and members of the putative class were paying considerable legal fees- often over $1,800 per investor- for Defendants to review documents relating to the purchase of the NDD investment made by Plaintiffs and members of the putative class. (AC ¶¶ 94-97)  The payment of legal fees by Plaintiffs and members of the putative class to Defendants for Defendants to review such NDD investment-related documents, and Defendants' acceptance of such fees, created an attorney-client relationship between Pearce & Durick and Plaintiffs. (AC ¶ 98)

Pearce & Durick also actively assisted NDD and its principals in the NDD Offerings by providing a U.S.-based locus for collection of the proceeds of the NDD Offering, by allowing its escrow accounts to be used for the purpose of receiving wire transfers of investor funds, by collecting the proceeds of purchases of the securities from investors, by collecting the transactional documentation from each investor and compiling them for NDD and its principals, and by providing "Opinions of Counsel" attesting to the completion of sales transactions to some investors. (WC ¶ 10)  Pearce & Durick also actively interfaced with NDD investors and endeavored to answer questions that investors posed about NDD, the transactions they were conducting with NDD, the status of their NDD investments, and the use of their investment proceeds, lending a false veneer of credibility to the NDD enterprise. (WC ¶ 11)  Finally, although Pearce & Durick was under a contractual obligation to NDD investors to disburse funds from escrow to NDD only after certain milestones in each NDD development had been reached, in fact Pearce & Durick repeatedly disbursed funds early to NDD, without verifying that investors' modular units had actually been manufactured or installed. (WC ¶ 12)

As NDD's sale of unregistered securities and other unlawful conduct became known to the public in recent months, the Securities Exchange Commission brought suit against NDD and its principals, Robert L. Gavin and Daniel J. Hogan, as well as various relief defendants, alleging violation of the federal securities laws (including, without limitation, due to sales of unregistered securities). *See SEC v. North Dakota Developments, LLC,* et al., U.S. District Court, District of North Dakota Case No. 4:15-cv-00053. (WC ¶ 14)  At the SEC's request, a receiver, Gary Hansen (the "Receiver") has been appointed. According to the Receiver's June 26, 2015 initial report, despite diligent efforts the receiver has located only about $175,000 in cash and liquid assets owned by NDD- although NDD is believed to have raised over $62 million in proceeds from the NDD Offering. (WC ¶ 15)

Plaintiffs now move this Court for the entry of Pre-Trial Order No 1 in the form submitted herewith, which would, *inter alia*, appoint Peiffer Rosca Wolf Abdullah Carr & Kane, A Professional Law Corporation ("Peiffer Rosca Wolf"), Hudson, Mallaney, Shindler & Anderson, P.C. ("Hudson Firm") and Law Office of Christopher J. Gray, P.C. ("Gray Firm") as Interim Class Counsel pursuant to Fed. R. Civ. P. 23(g)1.

## II.     THE COURT SHOULD APPOINT INTERIM CLASS COUNSEL

### A.     Standard for Appointment of Class Counsel

Pursuant to Rule 23(g), a court that certifies a class must appoint class counsel, who must "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). Under this Rule, the court evaluates counsel according to (1) their work in identifying and investigating plaintiffs' claims, (2) their experience in similar litigation, (3) their knowledge of applicable law, and (4) the resources they will commit to prosecuting the action. Fed. R. Civ. P. 23(g)(1)(C)(i);

---

1 All parties in the *Aleem* and *Wright* actions have stipulated to the consolidation of such actions pursuant to Fed. R. Civ. P. 42.  The parties are submitting the signed stipulation concerning consolidation to chambers herewith.

*see Iglesias-Mendoza v. LaBelle Farm, Inc.*, 239 F.R.D. 363, 375 (S.D.N.Y. 2007). These criteria are met by the three Proposed Class Counsel. Full firm resumes accompany this motion. *See* Declaration of J. Barton Goplerud ("Goplerud Decl.) dated August 26, 2015, Exhs. 1-3.

### B. The First Factor: Proposed Class Counsel Have Spent Significant Time and Devoted Substantial Resources to This Action

The Proposed Class Counsel in this case have invested substantial time and effort identifying and investigating claims against Defendants on behalf of the putative class. Counsel have interviewed scores of class members, reviewed voluminous e-mails and other documentation obtained from class members concerning their interactions with NDD and Defendants, and obtained significant documentation concerning NDD and its relationship with Defendants and class members. Counsel's pre-filing investigation included interviewing many NDD investors about their losses, reviewing class members' contracts with NDD and advertising materials that they reviewed in connection with their NDD investments, review of e-mails and other communications between class members and Pearce & Durick, review of public domain information including news articles and Internet postings concerning NDD and Pearce & Durick's activities, and legal research concerning liability under the North Dakota Securities Act (Chapter 10-04, N.D.C.C.) and other applicable law, among other activities. Counsel's investigation and development of the facts continued after the cases where filed. Together, counsel have expended hundreds of hours identifying and investigating Plaintiffs' claims. Thus, the first Rule 23(g) factor is readily satisfied.

### C. The Second Factor: Proposed Class Counsel Have Substantial Experience In Similar Litigation

The second factor also supports the appointment of Proposed Class Counsel. As fully set forth in Exhibits 1-3 to the Goplerud Decl., proposed Interim Co-Lead Counsel have extensive experience in the areas of professional malpractice, insurance coverage, securities litigation and other class action and complex litigation. In that regard, the Peiffer Rosca Wolf lawyers, the Hudson Law Firm, and the Gray Firm have been responsible for significant successful results on behalf of injured investors and classes in several securities class actions and other complex litigation.

### D. The Third Factor: Proposed Class Counsel Have Proven Knowledge of the Applicable Law

The third factor to be considered similarly supports the appointment of Proposed Class Counsel. Because of their extensive experience in representing plaintiffs in complex litigation, Proposed Class Counsel have a considerable background in federal and state securities laws and other related claims. Proposed Class Counsel also have extensive experience in insurance coverage issues and professional malpractice, and related litigation.

The firms' direct, relevant experience litigating class and complex actions, including cases under the securities laws and cases involving Ponzi schemes, merits appointment of the firms as interim class counsel in these actions. Counsel have demonstrated knowledge of the applicable law, and articulated a well-founded basis for professional liability arising from legal services provided by Pearce & Durick to Plaintiffs (and legal fees paid by Plaintiff to Pearce & Durick). In addition, Proposed Class Counsel have demonstrated knowledge of the law by articulating a basis for liability under the North Dakota Securities act that, subject to proof, may

result in a finding of joint and several liability against Pearce & Durick for the wrongful acts of NDD. Plaintiffs seek recovery from Defendants of, *inter alia,* statutory damages arising from Pearce & Durick's actions as an agent of NDD and active assistance of NDD in connection with the NDD Offering. *See* N.D.C.C. § 10-04-17 (providing that every "…agent of or for [a] seller who shall have participated or aided in any way in making such sale shall be jointly and severally liable to such purchaser.")

### E. Proposed Class Counsel Have All Resources Necessary to Represent the Proposed Class

Finally, Proposed Class Counsel have the ability and commitment to devote substantial resources to completing their representation of Plaintiffs and the proposed class. Proposed Class Counsel have a history of committing ample resources to class action litigation and advancing substantial costs to plaintiffs to fund the litigation, and will do the same here.

### CONCLUSION

For the foregoing reasons and authorities, Plaintiffs respectfully request that the Court grant the instant motion, enter Pre-Trial Order No. 1 in the form submitted herewith, and grant such other and further relief as the Court may deem just and proper.

Dated: August 26, 2015

        PEIFFER, ROSCA, WOLF
        ABDULLAH, CARR & KANE
        A PROFESSIONAL LAW CORPORATION
        */s/ Alan Rosca*
        By: Alan Rosca
        1422 Euclid Avenue, Suite 1610
        Cleveland, Ohio 44115
        Telephone: (216) 570-0097
        Facsimile: (888) 411-0038
        E-Mail: arosca@prwlegal.com

PEIFFER, ROSCA, WOLF
ABDULLAH, CARR & KANE
A PROFESSIONAL LAW CORPORATION
Joseph C. Peiffer
201 St. Charles Avenue, Suite 4610
New Orleans, LA 70170
Telephone:  (504) 523-2434
Facsimile:  (504) 523-2464
E-Mail:  jpeiffer@prwlegal.com

HUDSON, MALLANEY, SHINDLER &
ANDERSON, P.C.
J. Barton Goplerud
Brian O. Marty, (pro hac vice pending)
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265
Telephone:  (515) 223-4567
Facsimile:  (515) 2223-8887
E-Mail: jbgoplerud@hudsonlaw.net
          bmarty@hudsonlaw.net

LAW OFFICE OF
CHRISTOPHER J. GRAY, P.C..
Christopher J. Gray
360 Lexington Avenue, 14th Floor
New York, NY 10017
Telephone:  (212) 838-3221
Facsimile:  (212) 937-3139
E-Mail: chris@investorlawyers.net

*Proposed Interim Class Counsel*

LAW OFFICES OF JOSHUA B. KONS, LLC
Joshua B. Kons
50 Albany Turnpike, Suite 4024
Canton, CT 06019
Telephone: (860) 920-5181
E-mail: joshuakons@konslaw.com

LARSON LAW FIRM, P.C.
Mark V. Larson
1020 North Broadway
Minot, ND 58703
Telephone: (701) 839-1777
Facsimile: (701) 839-5350
E-mail:         larslaw@srt.com

SCHNEIDER, SCHNEIDER & SCHNEIDER
Mac J. Schneider
317 ½ Kittson Ave.
Grand Forks, ND 58201
Telephone:  (701) 757-2050
Facsimile:  (701) 757-2051
E-Mail: mac@schneiderlawfirm.com

*Additional Counsel for Plaintiffs*