**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| ABDUL ALEEM, et al., | | |
| Plaintiffs, | **Case No. 1:15-cv-00085** |
| vs. | | |
| PEARCE & DURICK and JONATHAN P. SANSTEAD, | | |
| Defendants. | | |

| | | |
|---|---|---|
| DOMINIC WRIGHT, et al., | | |
| Plaintiffs, | **Case No. 1:15-cv-00098** |
| vs. | | |
| PEARCE & DURICK, | | |
| Defendant. | | |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT, CERTIFICATION OF CLASS
AND APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL**

# Table of Contents

TABLE OF AUTHORITIES ............................................................................ II

I.    INTRODUCTION ................................................................................. 1

II.   DESCRIPTION OF THE LITIGATION AND THE UNDERLYING FACTS ................... 4

III.  THE PROPOSED SETTLEMENT ................................................................. 7

    A.  The Settlement Class ...................................................................... 7

    B.  Settlement Fund ............................................................................ 8

    C.  Settlement Allocation ..................................................................... 8

    D.  The Release of Settlement Class Members' Claims .................................. 9

    E.  Attorneys' Fees, Litigation Expenses and Administrative Costs ................... 9

IV.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ............................ 10

    A. The Settlement Satisfies the 8th Circuit Standards ................................. 11

    i.    Balance of the Merits of the Case Against Benefits of Settlement ............... 11

    ii.   Defendants' Financial Condition .................................................... 13

    iii.  The Complexity and Expense of Further Litigation ............................... 13

    iv.   The Settlement is the Result of Good Faith, Arms'-Length Negotiations by
        Well-Informed and Experienced Counsel ......................................... 14

V.    THE PROPOSED CLASS MEETS THE PREREQUISITES FOR CLASS
    CERTIFICATION UNDER FED. R. CIV. P. 23 ............................................. 15

    A. Fed. R. Civ. P.  23(a) .................................................................. 16

        (i)  Numerosity ....................................................................... 16

        (ii) Commonality ..................................................................... 16

        (iii)Typicality ......................................................................... 17

        (iv)Adequacy ......................................................................... 17

    B. Fed. R. Civ. P.  23(b)(1) .............................................................. 18

        (i)  A Limited Fund Exists .......................................................... 18

        (ii) The Entire Limited Fund is Devoted to Lead Plaintiffs' Claims ............. 18

(iii) Plaintiffs Are Equally Treated ...................................................................... 19

VI.  THE PROPOSED NOTICE IS ADEQUATE AND REASONABLE................................. 20

A.  Notice of the Class Satisfied the Requirements of Rule 23 and Due Process ............ 20

VII. CONCLUSION ................................................................................................ 21

# Table of Cases

**Cases**                                                                                                          **Page**

*Alpern v. UtiliCorp United*, 84 F.3d 1525 (8th Cir. 1996) ........................................................ 17

*ALPS Property & Casualty Ins. Co. v. Pearce & Durick*,
   Dkt. No. 1:15-cv-00090 (N.D.)............................................................. 2, 4, 3, 8, 12, 14

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ............................................................. 15

*Armstrong v. Board of Sch. Directors*, 616 F.2d 305 (7th Cir. 1980) ......................................... 10

*Bishop v. Committee on Professional Ethics & Conduct of Iowa State Bar Ass'n.*,
   686 F.2d 1278 (8th Cir. 1982) ............................................................................. 17

*Carpe v. Aquila, Inc.,* 224 F.R.D. 454 (W.D. Mo. 2004) ............................................... 16, 17, 18

*Charter Commc'ns, Inc. Sec. Litig.,* No. MDL 1506, 3:02-CV-1186 CAS, 2005 WL 4045741
   (E.D. Mo. 2005)........................................................................................... 13, 14

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977)....................................................................... 10

*DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171 (8th Cir. 1995) ...................................................... 15

Desert Orchid Partners, L.L.C. v. Transaction Sys. Architects, Inc., No. 8:02CV553, 2007 WL
   703515 (D. Neb. 2007) ........................................................................................ 12

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974).............................................................. 20, 21

*Holden v. Burlington N., Inc.,* 665 F. Supp. 1398 (D. Minn. 1987) ............................................. 10

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418 (S.D.N.Y. 2001)........ 20

*In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004) ........................... 20

*In re Katrina Canal Breaches Litig.*, 628 F.3d 185 (5th Cir. 2010) ............................................ 19

*In re Northfield Labs, Inc. Sec. Litig.,* No. 06 C 1493, 2012 WL 2458445 (N.D. Ill. 2012)........ 13

*In re OCA, Inc. Sec. and Deriv. Litig.*, No. 05-2165, 2009 WL 512081 (E.D. La. 2009)............ 13

*In re Take Two Interactive Secs. Litig.*, No. 06 Civ. 803 (RJS), 2010 U.S. Dist. LEXIS 143837
   (S.D.N.Y. 2010)................................................................................................. 15

*In re UnitedHealth Grp. Inc. PSLRA Litig.,* 643 F. Supp. 2d 1094 (D. Minn. 2009)................... 11

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922 (8th Cir. 2005) ............... 11, 13

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, MDL 1559, Master Case No. 4:03-md-01559,
   2004 U.S. Dist. LEXIS 23342 (W.D. Mo. 2004) ................................................. 10

*Klein v. O'Neal, Inc.,* No. 7:03-CV-102-D, 2006 WL 325766 (N.D. Tex. 2006) ........................ 18

*Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist.*, 921 F.2d 1371 (8th Cir. 1990).. 10, 12

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ............................................................. 16, 18, 19

*Paxton v. Union Nat'l Bank*, 688 F.2d 552 (8th Cir. 1982) ..................................................... 17, 18

*Petrovic v. Amoco Oil Co*., 200 F.3d 1140 (8th Cir. 1999) ..................................................... 15, 16

*Schoenbaum v. E.I. Dupont De Nemours & Co.*, 2009 WL 4782082 (E.D. Mo. 2009) ......... 10, 11

*SEC v. North Dakota Developments, LLC,* et al., U.S. District Court, District of North Dakota Case No. 4:15-cv-00053 ...................................................................................................... 7

*SEC v. North Dakota Developments, LLC,* U.S. District Court for the District of North Dakota, Dkt. No. 15-00053-DLM-CSM ....................................................................................... 8

*SEC v. W.J. Howey Co*., 328 U.S. 293 (1946) ............................................................................. 5

*Stott v. Capital Financial Services Inc.,* 277 F.R.D. 316 LEXIS 102907 (N.D. TEX. 2011) ...... 18

*Van Horn et al. v. Trickey*, et al, 840 F.2d 604 (8th Cir. 1988) ................................................... 11

*Vernon Gries v. Standard Ready Mix Concrete, L.L.C.,* C07-4013-MWB, 2009 WL 427281 (N.D. Iowa 2009) ............................................................................................................. 11

*Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011) ............................................................ 21

Plaintiffs and proposed class representatives Panircelvan S/O Kaliannan, Siew Geok Tong, Thong Juay Koh, Grant Ford, Dayong Yu, Dominic Wright, Andrew Chittenden, and Carolyn Ford (collectively "Lead Plaintiffs"), on behalf of themselves and the proposed Class (as defined below), have reached a proposed settlement of the above-captioned class action lawsuits seeking certification of a non-opt out class pursuant to Fed. R. Civ. P. 23(a) and 23(b)(1)(B) (the "Class Action" or the "Litigation") for a total of $5,100,000.00 in cash (the "Settlement").

If approved, the proposed Settlement will resolve all claims in the Class Action on behalf of investors in North Dakota Developments, LLC ("NDD") against Defendants Pearce & Durick and Jonathan P. Sanstead ("Settling Defendants"). Lead Plaintiffs now respectfully move the Court for an Order: (a) preliminarily approving the Settlement; (b) approving the form and manner of providing notice of the Settlement to the Class; (c) preliminarily certifying a settlement class; (d) appointing Class Counsel; and (e) setting a hearing date at which the Court will consider final approval of the Settlement, approval of the proposed Plan of Allocation, and Lead Counsel's motion for an award of attorneys' fees and reimbursement of litigation expenses.

Defense counsel have reviewed a draft of this brief and Defendants do not oppose the motion.

## I.    INTRODUCTION

Subject to Court approval, and as described herein, Lead Plaintiffs, on behalf of themselves and the putative Class (as defined below), have agreed to settle all claims asserted in the Class Action against the Settling Defendants in exchange for $5,100,000.00 in cash (the "Settlement Consideration"), to be deposited into an interest-bearing escrow account following preliminary approval.

As set forth in the Stipulation and Agreement of Settlement ("Settlement Agreement"), attached as Exhibit 1 to the Declaration of J. Barton Goplerud in Support of Lead Plaintiffs'

Motion dated March 4, 2016 ("Goplerud Decl."), the Settlement, if approved, will resolve all claims against Defendants and certain related parties. Lead Plaintiffs' principal reason for entering into the Settlement is the substantial cash benefit provided for the Class, representing substantially the maximum possible recovery against these Settling Defendants- considered against the significant risk that a smaller recovery – or indeed, no recovery – might be achieved after additional steps in the litigation that could last for years.

During the course of the litigation, Lead Plaintiffs, through proposed Class Counsel, among other things: (a) conducted an extensive investigation into the Class' claims; (b) drafted two detailed complaints and one consolidated complaint; (c) intervened in *ALPS Property & Casualty Ins. Co. v. Pearce & Durick,* Dkt. No. 1:15-cv-00090 ("Declaratory Judgment Action); (d) prepared a mediation statement and memoranda of law in connection with a mediation before Lewis A. Remele, Esq.; (e) engaged in in-person and telephonic meetings with defense counsel over the course of several months before reaching an agreement in principle to resolve the case; and (f) conducted third-party document discovery. Plaintiffs also will engage in confirmatory discovery as called for in and required by the Settlement Agreement.

The parties have now reached the final proposed resolution following a mediation conducted by Lewis A. Remele, Esq. in Minneapolis on November 3, 2015, at which counsel for all parties as well as representatives of Defendants' insurance carrier were in attendance. Counsel for the parties have also engaged in extensive settlement-related communications both before and after the mediation, including a previous in-person meeting in Minneapolis. These communications have also involved counsel for Defendants' professional liability insurance carrier, ALPS Property & Casualty Insurance Company, as well as the court-appointed receiver for NDD, Minneapolis attorney Gary Hansen, Esq., and personal counsel for Defendants

Sanstead and Pearce & Durick.  The Settlement thus embodies an agreement that, if approved, will resolve the Declaratory Judgment Action, as well as any claims that might have been asserted by the NDD receivership against the Settling Defendants, along with the claims in the Class Action.

Lead Plaintiffs have closely monitored and participated in this litigation, and recommend that the Settlement be approved.  Further, proposed Class Counsel, who have extensive experience in complex litigation and class actions, believe that the Settlement is in the best interests of the Class, which is defined as follows:

> All persons who have purchased and/or invested in NDD-issued securities and/or ownership interests in real estate ventures promoted by NDD, including without limitation developments known as Great American Lodge - Watford City West, Great American Lodge - Culbertson, Montana, Transhudson - Parshall, and Great American Lodge - Watford City East, during the Class Period.[1]

Settlement Agreement (Goplerud Decl. Exh. 1) Sections 1 (e) and (f).  The Class Period is defined in the Settlement Agreement as May 1, 2012 through June 30, 2015, inclusive.

At the final approval hearing (the "Final Fairness Hearing"), the Court will have before it more extensive motion papers submitted in support of the Settlement, and will be asked to make a final determination as to whether the Settlement is fair, reasonable, and adequate under all of the circumstances surrounding the Action.  At this juncture, Lead Plaintiffs request only that the Court grant preliminary approval of the Settlement so that notice of the Settlement may be

---

[1] Excluded from the proposed class are: (a) Defendants, any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants, and (b) Defendant's legal representatives, predecessors, successors and assigns.  The requirements for maintaining this action as a class action are satisfied as follows.

disseminated to the Class, the Class may have an opportunity to object, and the Final Fairness Hearing may be scheduled.

Accordingly, Lead Plaintiffs respectfully request that the Court enter the proposed Order Preliminarily Approving Settlement, Providing for Notice and Scheduling Hearing ("Scheduling Order"), which has been agreed upon by the Parties. (Goplerud Decl., Exh. 2)  The Scheduling Order will, if granted: (a) preliminarily approve the Settlement set forth in the Settlement Agreement; (b) approve the form and manner of giving notice to the Class; (c) preliminarily certify the Class for the purposes of Settlement; (d) appoint Class Counsel; and (e) set a date for the Final Fairness Hearing at which the Court will consider final approval of the Settlement, approval of the Plan of Allocation for distribution of the Settlement Fund, and counsel's application for attorneys' fees and expenses.

## II.   DESCRIPTION OF THE LITIGATION AND THE UNDERLYING FACTS

The Class Action arose out of the well-publicized decline and descent into receivership of a purported real estate development company known as NDD, a fraudulent real estate investment program that victimized approximately 1000 investors worldwide and unlawfully sold about $62 million of unregistered securities in the form of investment contracts.   In the Consolidated Complaint, Lead Plaintiffs assert claims against Defendants for legal malpractice, negligence, unjust enrichment and third-party beneficiary of attorney-client relationship.   The Consolidated Complaint also alleges that Defendant Pearce & Durick actively assisted NDD in offering unregistered securities to the public by actively assisting the principals of NDD and related companies in selling interests in certain modular housing units, coupled with management agreements, to investors both in the United States and abroad. (Consolidated Complaint (ECF No. 35, hereinafter referred to as the "CC"), ¶ 2)

The purported class alleges that investments were sold by NDD with Pearce & Durick's assistance in the form of Land Lease and Management Agreements and membership units in four commercial housing developments for workers in the Bakken oil field region of western North Dakota and eastern Montana- so-called "man camps" intended to house workers.  The four developments include Great American Lodge - Watford City West, Great American Lodge - Culbertson, Montana, Transhudson - Parshall, and Great American Lodge - Watford City East. (CC ¶¶ 42-43)

The investment contracts and membership units offered for sale and sold to the investors by NDD and its principals, with the alleged active assistance and participation of Pearce & Durick, are securities as defined in North Dakota Century Code ("N.D.C.C.") § 10-04-02(19). (CC ¶ 171)  This integrated offering of securities is sometimes referred to below as the "NDD Offering." Id. Plaintiffs allege that the interests sold in the NDD Offering are clearly securities within the meaning of applicable law. *See* N.D.C.C. § 10-04-02(19); *see also SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946), Section 2(a)(1) of Securities Act (15 U.S.C. 77b(a)(1) and Section 3(a)(10) of the Securities Exchange Act (15 U.S.C. 77b(a)(1)) (defining "security" as including "any… participation in any profit-sharing agreement [or]… investment contract). (CC ¶ 141) None of the securities sold in the NDD Offering were registered with the Securities and Exchange Commission or any state securities regulator, including the North Dakota Securities Department. (CC ¶ 140)

The offering materials for the NDD offering also allegedly contained misrepresentations and failed to disclose material facts, necessary to make the statements made in the offering documents, in light of the circumstances under which they were made, not misleading, in violation of N.D.C.C. § 10-04-04 and N.D.C.C. § 10-04-10. (CC ¶ 176)

Plaintiffs and members of the putative class, upon agreeing to invest in the NDD Scheme, were mandated to pay legal fees for Defendants to review the documents relating to their purchases of investments from NDD. (CC ¶ 87)  Plaintiffs allege that Defendants were aware that Plaintiffs and members of the putative class were paying considerable legal fees- often over $1,800 per investor- for Defendants to review documents relating to the purchase of the NDD investment made by Plaintiffs and members of the putative class. (CC ¶¶ 88-91)  Plaintiffs allege that the payment of legal fees by Plaintiffs and members of the putative class to Defendants for Defendants to review such NDD investment-related documents, and Defendants' acceptance of such fees, created an attorney-client relationship between Pearce & Durick and Plaintiffs. (CC ¶ 92)

Plaintiffs further allege that Pearce & Durick also actively assisted NDD and its principals in the NDD Offerings by providing a U.S.-based locus for collection of the proceeds of the NDD Offering, by allowing its escrow accounts to be used for the purpose of receiving wire transfers of investor funds, by collecting the proceeds of purchases of the securities from investors, by collecting the transactional documentation from each investor and compiling them for NDD and its principals, and by providing "Opinions of Counsel" attesting to the completion of sales transactions to some investors. (CC ¶ 177)  Plaintiffs continue by alleging Pearce & Durick also actively interfaced with NDD investors and endeavored to answer questions that investors posed about NDD, the transactions they were conducting with NDD, the status of their NDD investments, and the use of their investment proceeds, which, they allege, lent a false veneer of credibility to the NDD enterprise. (CC ¶ 178)  Finally, plaintiffs allege that although Pearce & Durick was under a contractual obligation to NDD investors to disburse funds from escrow to NDD only after certain milestones in each NDD development had been reached, in

fact Pearce & Durick repeatedly disbursed funds early to NDD, without verifying that investors' modular units had actually been manufactured or installed. (CC ¶ 179)

As NDD's sale of unregistered securities and other unlawful conduct became known to the public in recent months, the Securities Exchange Commission brought suit against NDD and its principals, Robert L. Gavin and Daniel J. Hogan, as well as various relief defendants, alleging violation of the federal securities laws (including, without limitation, due to sales of unregistered securities). *See SEC v. North Dakota Developments, LLC,* et al., U.S. District Court, District of North Dakota Case No. 4:15-cv-00053. (CC ¶ 161)   At the SEC's request, a receiver, Gary Hansen (the "Receiver") has been appointed. According to the Receiver's June 26, 2015 initial report, despite diligent efforts the receiver has located only about $175,000 in cash and liquid assets owned by NDD- although NDD is believed to have raised over $62 million in proceeds from the NDD Offering. (CC ¶ 164)

## III.    **THE PROPOSED SETTLEMENT**

### A.    **The Settlement Class**

The proposed settlement has been reached on behalf of the settlement class. As set forth above, the Class is defined as:

> All persons who have purchased and/or invested in NDD-issued securities and/or ownership interests in real estate ventures promoted by NDD, including without limitation developments known as Great American Lodge - Watford City West, Great American Lodge - Culbertson, Montana, Transhudson - Parshall, and Great American Lodge - Watford City East, during the Class Period.

**B.      Settlement Fund**

The Settling Defendants and ALPS will pay $5,100,000.00 in cash to resolve the claims of investors of NDD. The Class and each Member of the Class is limited solely to the Settlement Fund for the satisfaction of all Released Claims against all Released Parties (as provided more fully in the Settlement Agreement (Goplerud Decl. Exh. 1))

**C.      Settlement Allocation**

Under the proposed Plan of Allocation (the "Plan"), set forth in Section 12 of the Settlement Agreement (Goplerud Decl. Exh. 1), the proposed Settlement Administrator will calculate each Authorized Claimant's "Allowed Payment" by multiplying the Net Settlement Fund by a fraction, (1) the numerator of which is the Class Member's Allowed Loss Amount and (2) the denominator of which is the sum of each and every claiming Class Member's Allowed Loss Amount.

The structure of the Plan, which is set forth in full in the Notice, is comparable to plans of allocation that have customarily been used in class actions, and essentially provides for *pro rata* distribution of the settlement proceeds based on the size of Class members' losses.

The Plan is not a part of or a condition of approval of the Settlement.  Under the Settlement Agreement, the Net Settlement Fund may be distributed in accordance with the proposed Plan or such other plan as the Court may approve.

The sum of any Allowed Payments that are not deposited or otherwise claimed by Class Members ("Unclaimed Funds") shall be paid by the Settlement Administrator to the Receiver to pay receivership expenses or for distribution to creditors of NDD, including Class Members, in a manner to be approved by the Court in *SEC v. North Dakota Developments, LLC,* U.S. District Court for the District of North Dakota, Dkt. No. 15-00053-DLM-CSM.

8

**D.     The Release of Settlement Class Members' Claims**

If the Settlement Agreement becomes effective, each Class member:

> releases and forever discharges, to the fullest extent permitted by
> law, the Released Parties from and against any and all manner of
> claims, demands, actions, suits, causes of action, damages
> whenever incurred, liabilities of any nature and kind whatsoever,
> including without limitation costs, expenses, penalties and
> attorneys' fees, known or unknown, suspected or unsuspected, in
> law or equity, that each and every Class Member (including any of
> their past, present or future parents, subsidiaries, divisions,
> affiliates, stockholders, and each and any of their respective
> stockholders, officers, directors, insurers, general or limited
> partners, agents, attorneys, employees, legal representatives,
> trustees, associates, heirs, executors, administrators, purchasers,
> predecessors, successors and assigns, acting in their capacity as
> such), whether or not they object to the Settlement and whether or
> not they make a claim upon or participate in the Settlement Fund
> (the "**Releasing Parties**"), ever had, now has, or hereafter can,
> shall or may have, directly, representatively, derivatively or in any
> other capacity (collectively, the "**Released Claims**").

(Goplerud Decl., Exh. 1, Section 10.1)

**E.     Attorneys' Fees, Litigation Expenses and Administrative Costs**

The Settlement Agreement provides as follows with respect to attorneys' fees and

litigation expenses:

> Lead Counsel may apply to the Court at the time of approval of the Settlement for an
> award from the Settlement Fund of Class Counsel attorneys' fees and reimbursement of
> costs, expenses and charges.  Lead Counsel intend to apply for an award of 28-33 percent
> of the Settlement Fund, and for reimbursement of costs and expenses in an amount of
> approximately $35,000.

(Goplerud Decl., Exh. 1 at Section 21.1)

With respect to administrative costs of claims administration the Settlement Agreement

provides that claims administration costs of approximately $25,000 shall be paid by the

Settling Defendants. (Goplerud Decl., Exh. 1 at Section 3)

## IV.     THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

The settlement of complex class action litigation is favored by public policy and strongly encouraged by the courts.  *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) (In the class action context in particular, "there is an overriding public interest in favor of settlement"); *Armstrong v. Board of Sch. Directors*, 616 F.2d 305, 313 (7th Cir. 1980) (settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources*); see also Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist*., 921 F.2d 1371, 1391 (8th Cir. 1990) (the policy in favor of settlement is so strong that such agreements are "presumptively valid").  "It is the surety of settlement that makes it a favored policy in dispute resolution as compared to unknown dangers and unforeseen hazards of litigation." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, MDL 1559, Master Case No. 4:03-md-01559, 2004 U.S. Dist. LEXIS 23342 at *31 (W.D. Mo. Apr. 20, 2004) (citation omitted).

Federal Rule of Civil Procedure 23(e) requires judicial approval for the compromise of class claims.  Judicial review of a class action settlement consists of a two-step process: preliminary approval and a subsequent fairness hearing.  At preliminary approval, a court must assess the terms of a settlement only to determine whether it falls within the range of possible approval. *Holden v. Burlington N., Inc.,* 665 F. Supp. 1398, 1402 (D. Minn. 1987); *Schoenbaum v. E.I. Dupont De Nemours & Co.*, 2009 WL 4782082 at *3 (E.D. Mo. Dec. 8, 2009) ("At the preliminary approval stage, the 'fair, reasonable, and adequate' standard is lowered, with emphasis only on whether the settlement is within the range of possible approval due to an absence of any glaring substantive or procedural deficiencies.").

In the Eighth Circuit, district courts are required to consider four factors in determining whether a class action settlement is fair, reasonable, and adequate: (i) the merits of the plaintiffs'

case, weighed against the terms of the settlement; (ii) the defendants' financial condition; (iii) the complexity and expense of further litigation; and (iv) the amount of opposition to the settlement. *In re Wireless Tel. Fed. Cost Recovery Fees Litig.,* 396 F.3d 922, 932 (8th Cir. 2005); *Van Horn et al. v. Trickey*, et al, 840 F.2d 604, 606-607(8th Cir. 1988) (citing *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975).

Lead Plaintiffs here request that the Court take the first step in the settlement approval process and grant preliminary approval of the Settlement so that notice of the Settlement can be given to the Class.  As summarized below, and as will be detailed further in a subsequent motion for final approval of the Settlement, a preview of the factors considered by courts in granting final approval of class action settlements demonstrates that the Settlement is well "within the range of possible approval" and that preliminary approval should be granted.  *Schoenbaum v. E.I. Dupont De Nemours & Co*., 2009 WL 4782082, at *3 (E.D. Mo. Dec. 8, 2009).

## A.    The Settlement Satisfies the 8th Circuit Standards

### i.    Balance of the Merits of the Case Against Benefits of Settlement

The Eighth Circuit Court of Appeals has observed that "[t]he most important consideration in deciding whether a settlement is fair, reasonable, and adequate is 'the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement.'" *Vernon Gries v. Standard Ready Mix Concrete, L.L.C.,* C07-4013-MWB, 2009 WL 427281, at *10 (N.D. Iowa Feb. 20, 2009).  Courts balance the continuing risks of litigation against the benefits afforded to members of the class and the immediacy and certainty of the recovery. *See In re UnitedHealth Grp. Inc. PSLRA Litig.,* 643 F. Supp. 2d 1094, 1099 (D. Minn. 2009).  In evaluating settlements of securities class actions, federal courts recognize that "[p]roof of both liability and damages in securities cases is complex and difficult and generally requires a

significant amount of expert accounting or statistical evidence." *Desert Orchid Partners, L.L.C. v. Transaction Sys. Architects, Inc.,* No. 8:02CV553, 2007 WL 703515 at *2 (D. Neb. Mar. 2, 2007).

The $5,100,000.00 settlement provides a substantial and immediate benefit to the class. And although Lead Counsel is able to prove merit to the claims asserted in the case, there is a substantial  risk Class members would not be able to recover anything at all.  NDD and all of its limited assets have been placed in receivership by the SEC, making any substantial recovery directly from NDD and/or its principals extremely unlikely. In addition, ALPS has contested the existence of any professional liability insurance for Defendants with respect to the Class Action and instituted the Declaratory Judgment Action in order to determine insurance coverage issues. Even if Plaintiffs go through the lengthy process of litigation against Defendants, there would be contemporaneous coverage litigation in the Declaratory Judgment Action and there is no guarantee that any coverage would exist with respect to any allegation made against Defendants. The Settlement results in the payment by ALPS of $4,800,000 which, together with the resolution of other related claims, exhausts the $5,000,000 each claim limit of liability of the policy issued by ALPS.  Additionally, if the case were to continue to be litigated, the Class would still need to overcome numerous defenses in order to survive any dispositive summary judgment motions or recover at trial.  And, again, even if Lead Plaintiffs prevailed and achieved total victory at trial, their recovery would likely be limited to little more than $5,000,000 even if any coverage at all were deemed to exist under the policy issued by ALPS and to the extent the limit of such policy was not reduced by defense costs.

### ii.      Defendants' Financial Condition

Defendants' financial condition weighs in favor of approval of the Settlement. *See, e.g.,*
*Charter Commc'ns, Inc. Sec. Litig.,* No. MDL 1506, 3:02-CV-1186 CAS, 2005 WL 4045741 at
*8 (E.D. Mo. June 30, 2005) (approving settlement and noting that even if lead plaintiffs
prevailed on their claims and overcame liability challenges, there were considerable risks
regarding its ability to collect any sizeable judgment from defendant); *In re Northfield Labs, Inc.*
*Sec. Litig.,* No. 06 C 1493, 2012 WL 2458445 at *3 (N.D. Ill. June 26, 2012) (granting final
approval to settlement and noting that the "plaintiff class is unlikely ever to get more" where
defendant was in bankruptcy and the settlement proceeds came from an insurance policy, which
if the case continued, may reach its limit due to defense fees and costs); *In re OCA, Inc. Sec. and*
*Deriv. Litig.*, No. 05-2165, 2009 WL 512081 at *15 (E.D. La. Mar. 2, 2009) (noting that
bankruptcy and the fact that defendant's insurance policies were being depleted by litigation
expenses and attorneys' fees, weighed in favor of approval of settlement).

### iii.      The Complexity and Expense of Further Litigation

"The possible length and complexity of further litigation is a relevant consideration to the
trial court in determining whether a class action settlement agreement should be affirmed."
*Charter Commc'ns,* 2005 WL 4045741, at *8.  Courts must weigh the immediate benefits of a
settlement against the additional time and expense of achieving a litigated verdict. *See, e.g.,*
*Wireless Tel.*, 396 F.3d at 933 ("barring settlement, this case would 'likely drag on for years,
require the expenditure of millions of dollars, all while the class members would receive
nothing'").

The claims alleged by the Class involve complex legal and factual issues.  If the Action
were to proceed to trial, Lead Plaintiffs would have to overcome the numerous defenses asserted
by Defendants.   Among other things, the Parties disagree about (i) whether Defendants

negligently failed to inform the Class that they were purchasing unregistered securities from NDD; (ii) whether Defendants received legal fees from Class Members; (iii) whether an attorney-client relationship existed between Defendants and Class Members; (iv) whether Defendants jointly or severally violated the North Dakota Securities Act; (v) whether Defendant Pearce & Durick breached its fiduciary duty; and (vii) whether in this case a class could have been certified.   The Parties also disagree on the appropriate methodology for determining damages.

In addition, even if Lead Plaintiffs were to prevail on liability and damages at trial, Defendants could appeal the verdict.  At best, the appeals process would lead to further delays, and, at worst, it would lead to a recovery that is less than the Settlement Consideration or possibly no recovery at all.  This Settlement enables the Class to recover without incurring any additional risks or costs.

Moreover, the existence of insurance coverage for Defendants is questionable and subject to further litigation in the Declaratory Judgment Action. If ALPS prevailed in that Action, no coverage for the Class Action would exist and ALPS's contribution to the settlement of $4,800,000.00 would not be available. If coverage were determined to exist, the maximum limit of insurance available likely would be $5,000,000.00, which would be reduced by all defense costs paid by ALPS with respect to its defense of Defendants to the extent, as is likely, defense costs exceeded $1,000.000.00.

### iv.     The Settlement is the Result of Good Faith, Arms'-Length Negotiations by Well-Informed and Experienced Counsel

Courts presume that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations between well-informed counsel.  *See Charter Commc'ns, Inc. Sec. Litig.,* No. MDL 1506, 3:02-CV-1186 CAS, 2005 WL 4045741 (E.D. Mo. June 30, 2005) ("there is a presumption of fairness when a settlement is negotiated at arm's length by well-informed

counsel").   Here, the Settlement was achieved only after protracted arm's-length negotiations, and based on a full examination and investigation of the facts.

Further, in determining the good faith of this settlement proposal, the Court should consider the judgment of Lead Counsel.  *See Petrovic v. Amoco Oil Co*., 200 F.3d 1140, 1148-49 (8th Cir. 1999) ("[j]udges should not substitute their own judgment as to the optimal settlement terms for the judgment of the litigants and their counsel"); *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995) ("the views of counsel are to be accorded deference") .  Lead Counsel have substantial experience in complex litigation and class actions, and their informed judgment that the Settlement is in the best interest of the Class should be given considerable weight. Consequently, the Court has ample evidence that the Settlement was negotiated in good faith by well-informed counsel, and was not the product of collusion.

## V.      THE PROPOSED CLASS MEETS THE PREREQUISITES FOR CLASS CERTIFICATION UNDER FED. R. CIV. P. 23

"Courts often certify classes for settlement purposes, and it is not uncommon for courts to certify settlement classes on a preliminary basis, at the same time as the preliminary approval of the fairness of the settlement, solely for the purpose of settlement, deferring final certification of the class until after the fairness hearing."  *In re Take Two Interactive Secs. Litig.*, No. 06 Civ. 803 (RJS), 2010 U.S. Dist. LEXIS 143837 at *16 (S.D.N.Y. June 29, 2010).  Before a settlement class is approved it must satisfy each requirement set forth in Rule 23(a), as well as at least one of the subsections of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997). The United States Supreme Court has recognized that the requirements for approving a settlement class are lower than those for a litigated class.  *Id*. at 620.

Rule 23(a) sets forth the following four prerequisites to class certification: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation.   Where, as here, the

plaintiff alleges that a class may be maintained under Rule 23(b)(1), a court may grant class certification if : "(1) the totals of the aggregated liquidated claims and the fund available for satisfying them, set definitely at their maximums, demonstrate the inadequacy of the fund to pay all the claims, (2) the whole of the inadequate fund must be devoted to the overwhelming claims, and (3) the claimants must be equitably treated amongst themselves." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 849 (1999).  Lead Plaintiffs submit that the proposed Class satisfies each of the requirements of Rules 23(a) and 23(b)(3).

### A.    Fed. R. Civ. P.  23(a)

#### (i)    Numerosity

Rule 23(a)(1) requires that the members of the class be sufficiently numerous such that joinder of all of them in a single action is impracticable. "Satisfaction of the numerosity prong does not require that joinder be impossible, but only that plaintiffs will suffer a strong litigational hardship or inconvenience if joinder is required." *Carpe v. Aquila, Inc.,* 224 F.R.D. 454, 457 (W.D. Mo. 2004) (citation omitted).    Here, Defendants have admitted that the NDD had approximately 900 investors, all of whom are Class members.

#### (ii)    Commonality

Rule 23(a)(2)'s "commonality" requirement is satisfied if a claim arises out of the same legal or remedial theory. However, as noted in *Petrovic*, *supra,* 200 F.3d at 1148, "the interests of the various plaintiffs do not have to be identical to the interests of every class member; it is enough that they share common objectives and legal or factual positions. (Internal quotations marks and citations omitted); *see Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559 (8th Cir. 1982).

The common questions of fact and law include: (i) whether Defendants negligently failed to inform the Class that they were purchasing unregistered securities from NDD; (ii) whether

Defendants received legal fees from Class Members; (iii) whether an attorney-client relationship existed between Defendants and Class Members; (iv) whether Defendants jointly or severally violated the North Dakota Securities Act; and (v) whether Defendant Pearce & Durick breached its fiduciary duty. *See* CC ¶ 186.

### (iii)    Typicality

In order to satisfy the typicality requirement of Rule 23(a)(3), Lead Plaintiffs must show that its claims are typical of the class' claims - that its grievances are similar to those of other class members. *Alpern v. UtiliCorp United*, 84 F.3d 1525, 1541 (8th Cir. 1996).

Here, the claims of Lead Plaintiffs arise from the same events or course of conduct that give rise to claims of other class members, and the claims asserted are based on the same legal theory. *See, e.g., Carpe,* 224 F.R.D. at 457. Therefore, the typicality requirement is satisfied.

### (iv)    Adequacy

Rule 23(a)(4) requires that representatives of the class be "adequate." To meet this criterion, the representative Lead Plaintiffs' interests must be consistent with, and not antagonistic to, those of the Class. Moreover, Lead Counsel must be qualified, competent and diligent. See, e.g., *Bishop v. Committee on Professional Ethics & Conduct of Iowa State Bar Ass'n.*, 686 F.2d 1278, 1288 (8thCir. 1982); *Carpe,* 224 F.R.D. at 458; *Paxton*, 688 F.2d at 562-63.

As described above, Lead Plaintiffs have claims that are typical of and coextensive with those of the Class.  Lead Plaintiffs, like all Class Members, purchased unregistered NDD securities and were harmed by Defendants' alleged violations of law. Further, Lead Plaintiffs have retained counsel highly experienced in complex litigation and class actions.  Lead Counsel's qualifications are discussed in more detail below.  Lead Counsel has further demonstrated their adequacy by the substantial work undertaken in prosecuting this Action as discussed herein.

17

### B.   Fed. R. Civ. P.  23(b)(1)

#### (i)   A Limited Fund Exists

To satisfy this prong of rule 23(b)(1) "the settling parties must provide evidence on which the district court may ascertain the limit of the insufficiency of the fund." *Ortiz*, 527 U.S. at 850; *see also Stott v. Capital Financial Services Inc.*, 277 F.R.D. 316 LEXIS 102907 (N.D. TEX. 2011).

Here the amount of losses is known and ascertainable, the total loss is $62 million and each class member can easily determine the loss in his or her investment in NDD. *See Klein v. O'Neal, Inc.*, No. 7:03-CV-102-D, 2006 WL 325766, at *4 (N.D. Tex. 2006) (in proposed "limited fund" settlement of mass tort claims, rejecting first element because "plaintiffs' estimate of potential claim liability does not provide the court with any comfortable certainty of the total value of the claims"). In addition, the maximum amount Lead Plaintiffs can receive from Defendants comes almost exclusively from Defendants' insurance policy.  Including payments from Pearce & Durick, Lead Plaintiffs will receive more than the full amount of the each claim limit of Defendants' professional liability insurance policy ($5,000,000.00), or a total of $5,100,000, and Lead Plaintiffs will avoid the risk and uncertainty of litigation in the Class Action as well as in the Declaratory Judgment Action, one possible outcome of which is a ruling that no insurance coverage exists with respect to the Class Action.

#### (ii)   The Entire Limited Fund is Devoted to Lead Plaintiffs' Claims

The second prong of rule 23(b)(1) indicates that the entire fund, with certain recognized exceptions, must be used to pay plaintiffs. *Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 327 (N.D. Tex. 2011) ("Regarding the second *Ortiz* factor, it is clear that the whole of the settlement fund [less costs and attorneys' fees] will be devoted to paying claimants.").

In the present case, the majority of the limited fund will be distributed to the class members for their losses in NDD. Lead Counsel will receive attorneys' fees from the limited fund, in a sum to be approved by the Court, for the work they put into the case. Payment of attorneys' fees is an exception to the rule that all of the limited funds must be devoted to plaintiffs' losses, and so Lead Plaintiffs have successfully fulfilled this prong.

### (iii)   Plaintiffs Are Equally Treated

The third prong of rule 23(b)(1) requires a showing that plaintiffs will be treated in a fair and equitable manner. *Ortiz*, 527 U.S. at 855-56 ("at the least such a settlement must seek equity by providing for procedures to resolve the difficult issues of treating such differently situated claimants with fairness as among themselves"); *See, e.g., In re Katrina Canal Breaches Litig*., 628 F.3d 185, 193-94 (5th Cir. 2010) (vacating limited fund class certification where class members "suffered a wide variety of injuries . . . and no method [wa]s specified for how these different claimants will be treated vis-à-vis each other"). "In approving an allocation plan, the Court must ensure that the distribution of funds is fair and reasonable." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004). "When formulated by competent and experienced class counsel, an allocation plan need have only a 'reasonable, rational basis.'" *Id.* (quoting *In re Am. Bank Note Holographics, Inc. Sec. Litig*., 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001)).

The distribution plan for the funds to the class members is fair and even distributes the total $5,100,000.00 amongst the class members *pro rata*. Without the class settlement individual class members would be subject to unfair distributions or no recovery at all.   *See* Marcy Hogan Greer, A Practitioner's Guide to Class Actions 77 (American Bar Association Publication 2010) at 77 (noting that the use of the "limited fund" device is appropriately used when "claimants suing individually would be prejudiced by exhaustion of the limited fund").

19

## VI.   THE PROPOSED NOTICE IS ADEQUATE AND REASONABLE

### A.   Notice of the Class Satisfied the Requirements of Rule 23 and Due Process

Rule 23(c)(2)(B) requires the court to "direct class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *see Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974).

The proposed Scheduling Order (Goplerud Decl. Exh. 2) provides for mailing and e-mailing this notice directly to each Class member.  Lead Counsel will also establish a website www.nddclassaction.com to further disseminate the notice and other documents in connection with the Settlement and the Class Action to members of the Class.  Further, Lead Counsel believe that they have current contact information, including mailing addresses, e-mail addresses and/or telephone numbers (although in some cases only an e-mail address or a telephone number), for the vast majority of members of the Class, and will canvass all available information including documents gathered by the Receiver and/or maintained by Pearce & Durick, to construct the most comprehensive program of notice that is practicable.  This program of notice clearly is the "best notice that is practicable under the circumstances." *See Eisen,* 417 U.S. at 173.

The substance of the proposed program of notice also fulfills the requirements of Rule 23.  As required by Rule 23(c)(2)(B), the notice annexed to the Goplerud Decl. as Exh. 3 to states concisely and clearly, in plain, easily understood English: (i) the nature of the action; (ii) the definitions of the certified class; (iii) the class claims, issues or defenses; (iv) that a class member may enter an appearance through an attorney, and/or file an objection, if the member so desires;   and (v) the binding effect of a class judgment on members under Rule 23(c)(3) and the terms of the releases. Notice regarding a proposed settlement is adequate under both Rule 23 and

due process standards if it "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," and it can "be understood by the average class member." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011).  Here, Class members were solicited and transacted with NDD in English, and notice in the English language is fair, readily understandable and adequate.

## VII.    <u>CONCLUSION</u>

Based upon the foregoing reasons and authorities, Lead Plaintiffs respectfully request that the Court grant preliminary approval of the proposed Settlement and enter the accompanying proposed Preliminary Approval Order (Goplerud Decl. Exh. 2).

Dated: March 4, 2016

PEIFFER, ROSCA, WOLF
ABDULLAH, CARR & KANE
A PROFESSIONAL LAW CORPORATION

_____
By: Alan Rosca
1422 Euclid Avenue, Suite 1610
Cleveland, Ohio 44115
Telephone:  (216) 570-0097
Facsimile:  (888) 411-0038
E-Mail:  arosca@prwlegal.com

PEIFFER, ROSCA, WOLF
ABDULLAH, CARR & KANE
A PROFESSIONAL LAW CORPORATION
Joseph C. Peiffer
201 St. Charles Avenue, Suite 4610
New Orleans, LA 70170
Telephone:  (504) 523-2434
Facsimile:  (504) 523-2464
E-Mail:  jpeiffer@prwlegal.com

HUDSON, MALLANEY, SHINDLER &
ANDERSON, P.C.
J. Barton Goplerud
Brian O. Marty, (pro hac vice pending)
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265
Telephone:  (515) 223-4567
Facsimile:  (515) 2223-8887
E-Mail: jbgoplerud@hudsonlaw.net
          bmarty@hudsonlaw.net

LAW OFFICE OF
CHRISTOPHER J. GRAY, P.C..
Christopher J. Gray
360 Lexington Avenue, 14th Floor
New York, NY 10017
Telephone:  (212) 838-3221
Facsimile:  (212) 937-3139
E-Mail: chris@investorlawyers.net

*Interim Class Counsel*


LARSON LAW FIRM, P.C.
Mark V. Larson
1020 North Broadway
Minot, ND 58703
Telephone: (701) 839-1777
Facsimile: (701) 839-5350
E-mail: larslaw@srt.com

LAW OFFICES OF JOSHUA B. KONS, LLC
Joshua B. Kons
50 Albany Turnpike, Suite 4024
Canton, CT 06019
Telephone: (860) 920-5181
E-mail: joshuakons@konslaw.com

SCHNEIDER, SCHNEIDER & SCHNEIDER
Mac J. Schneider
317 ½ Kittson Ave.
Grand Forks, ND 58201
Telephone:  (701) 757-2050
Facsimile:  (701) 757-2051
E-Mail: mac@schneiderlawfirm.com

*Additional Counsel for Plaintiffs*

22